# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X <br> : <br> : <br> : <br> : <br> **IN RE NICHOLAS SCHMIDLE,** : <br> : <br> Non-Party Movant : <br> : <br> : <br> : <br> - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X | Miscellaneous Case No. _____ <br><br> **Underlying Litigation:** <br> *Hood v. City of Chicago, et al.*, <br> Case No. 16-cv-1970 <br> United District Court for the <br> Northern District of Illinois |

## DECLARATION OF NICHOLAS SCHMIDLE

I, **NICHOLAS SCHMIDLE**, declare as follows:

1. I am a journalist and author.  As relevant here, I joined *The New Yorker* as a staff writer in 2012 and have published a number of articles in the magazine since.  I am currently living in Europe and working on my second book.

2. Among the numerous articles under my byline published by *The New Yorker*[1] was one titled "Crime Fiction: Did the Chicago police coerce witnesses into pinpointing the wrong man for murder?" ("the Article").  Published in the August 4, 2014 issue of the magazine, the Article considered the 1993 arrest, and 1995 conviction, of a Chicago man named Tyrone Hood for the murder of Marshall Morgan despite credible allegations that police had coerced witness statements and now despite strong evidence that another man committed the crime.

---

[1] My work for *The New Yorker* is available online at https://www.newyorker.com/contributors/nicholas-schmidle.

3. I spent more than eight months reporting the Article, and my newsgathering included the review of documents and interviews with dozens of sources, which included both on-the-record sources and confidential sources.

4. Attached hereto as <u>Exhibit A</u> is a true and correct copy of the Article. The Article is also available online at https://www.newyorker.com/magazine/2014/08/04/crime-fiction. *The New Yorker* also posted video of the later confession of the victim's estranged and troubled father—who had taken out a life insurance policy on Marshall Morgan just months before—to a similar killing, the second one he has confessed to committing. That video, and my short article explaining it, is also available online, at https://www.newyorker.com/news/news-desk/video-confession-murder.

5. In January 2015, outgoing Illinois Governor Patrick Quinn commuted the remainder of Mr. Hood's 75-year prison sentence. Summarizing this news, I wrote a January 13, 2015 follow-up article for *The New Yorker*, titled "Freedom for Tyrone Hood." Attached hereto as <u>Exhibit B</u> is a true and correct copy of that article. It is also available online at https://www.newyorker.com/news/news-desk/freedom-tyrone-hood.

6. After a court dismissed charges against Mr. Hood, I understand that in 2016 he filed a federal civil rights claim against the City of Chicago and eleven police officers, captioned *Tyrone Hood v. City of Chicago et al.*, No. 16 CV 1970 (N.D. Ill.) ("the Lawsuit").

7. On March 7, 2019, I received a document subpoena issued by counsel for the police officer defendants ("Defendants") in the Lawsuit ("the Document Subpoena"). The Document Subpoena was dated February 22, 2019, and was delivered to me by certified mail. Attached hereto as <u>Exhibit C</u> is a true and correct copy of the Document Subpoena.

8.	My legal counsel at *The New Yorker* sent an objection to the Document Subpoena on March 13, 2019.  Attached hereto as <u>Exhibit D</u> is a true and correct copy of that objection.

9.	Until June 29, 2019, I lived in Washington, D.C.  On June 18, 2019, a process came to my house and handed me a deposition subpoena ("the First Deposition Subpoena").  The First Deposition Subpoena did not seek any documents, and said that I should appear at a location to be determined on July 12, 2019, for a deposition.  Attached hereto as <u>Exhibit E</u> is a true and correct copy of the First Deposition Subpoena.

10.	On June 27, two days before my family was scheduled to move to London, a person I assume to be process server left a document on the front mat of my home in Washington, D.C.  She did not hand me the document or otherwise personally serve me.  After she left, I took a picture of the document through a window:



11. I then retrieved the document from outside my door, which was yet another subpoena ("the Second Deposition Subpoena"). Attached hereto as <u>Exhibit F</u> is a true and correct copy of the Second Deposition Subpoena. It was much like the First Deposition Subpoena, except it set a specific place for a July 12, 2019 deposition.

12. The morning of Saturday, June 29, our movers arrived, and we flew out to London that night. Thus, my family moved to England that weekend. I am currently in residency at Rockefeller Center in Italy from July 8-29, but will then return to London and continue working on my next book.

13. On July 10, 2019, I received another copy of the Document Subpoena by email, from someone who I understand to be an agent of the Defendants. A cover letter stated, "[p]lease send the requested records along with the signed and dated Compliance Form." The email made no mention of the objection correspondence by my lawyer at *The New Yorker*. Nor was any mention made of the fact that my separate outside counsel had discussed the Deposition Subpoenas with counsel for the Defendants.

14. Attached hereto as <u>Exhibit G</u> is a true and correct copy of the printed email, with attachment, that I received on July 10, 2019.

15. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 19th day of July 2019.

*Nicholas Schmidle*