# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRONE HOOD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:19-mc-00123(APM) |
| CITY OF CHICAGO, et al., | ) Underlying Litigation: |
| | ) *Hood v. City of Chicago, et al.*, |
| Defendants, | ) Case No. 16-cv-1970 |
| v. | ) United States District Court for |
| | ) the Northern District of Illinois, |
| NICHOLAS SCHMIDLE, | ) Eastern Division |
| Non-party Respondent. | ) |

## MEMORANDUM OPINION

### I.

Non-party Respondent Nicholas Schmidle ("Respondent") is a journalist. He moves to quash two deposition subpoenas issued by the defendants in a civil rights case pending in the Northern District of Illinois, titled *Tyrone Hood v. City of Chicago, et al.* No. 16-cv-1970 (N.D. Ill. filed Feb. 5, 2016). The defendants in that action are the Chicago Police Department and the City of Chicago ("Defendants"). Defendants seek transfer of this dispute to the Northern District of Illinois and, absent such transfer, they ask the court to reject Respondent's request to avoid testimony.

For the reasons set forth below, the court denies Defendants' Motion to Transfer and grants Respondent's Motion to Quash.

II.

In the summer of 2014, Respondent wrote and published an article entitled "Crime Fiction" in *The New Yorker* magazine about the 1996 murder conviction of a Chicago man named Tyrone Hood. Resp't Mot. to Quash Subpoenas or for a Protective Order, ECF No. 1, 1-1 [hereinafter Mot. to Quash], Ex. A, ECF No. 1-2 [hereinafter Article]. The Article described the circumstances surrounding the murder, Hood's activities on the day of the crime, the investigation that followed, Hood's conviction, the actions of an alternate suspect, and Hood's lawyers' attempts to exonerate him. *See generally* Article. The Article identified as evidence of Hood's wrongful conviction allegations of police misconduct, recantations by witnesses, and evidence suggesting another perpetrator. *Id.* At the time the Article was published, Hood had served approximately twenty years in prison. *Id.*

In January 2015, Illinois Governor Patrick J. Quinn commuted the remainder of Hood's sentence. *Id.*, Ex. D, ECF No. 6-7 [hereinafter Ex. D], at 6–7. The commutation of Hood's sentence was motivated, at least in part, by investigative reporting, including Respondent's Article. *See* Defs.' Opp'n, Ex. B, The Exoneration Project Panel Discussion, ECF No. 6-5, at 8 (Governor Quinn noting that The New Yorker and Respondent "deserved a lot of credit" for raising attention about the issues in Hood's case.); *see also* Ex. D at 12–30 (showing that Respondent's Article was part of Hood's Clemency File, which was sent to Governor Quinn). Shortly after the Governor's grant of clemency, the Cook County State's Attorney Office, following a two-year investigation by its Conviction Integrity Unit, successfully asked a Cook County court to vacate Hood's conviction.[1]

---

[1] Patrick M. O'Connell, *Murder conviction dismissed for man who spent 22 years in prison*, THE CHICAGO TRIBUNE (Feb. 9, 2015, 5:38 PM), https://www.chicagotribune.com/news/breaking/ct-tyrone-hood-conviction-dismissed-met-0210-20150209-story.html.

The following year, on February 5, 2016, Hood filed a lawsuit against employees of the Chicago Police Department and the City of Chicago in the Northern District of Illinois. *See Hood v. City of Chicago*, No. 1:16-cv-01970 (N.D. Ill. filed Feb. 5, 2016) [hereinafter Illinois Docket]. Hood brought claims under 42 U.S.C. § 1983, as well as a number of state law claims. Compl., Illinois Docket, ECF No. 1.

Defendants dispute Hood's innocence. They believe that Respondent's Article was part of a carefully coordinated media campaign by Hood's post-conviction counsel designed to garner attention and support for Hood's case. Individual Officers' Mem. of Law in Supp. of Mot. to Transfer and in Opp'n to Mot. to Quash, ECF No. 7 [hereinafter Defs.' Opp'n], at 1, 5. To obtain support for this theory, Defendants issued three subpoenas to Respondent. On March 7, 2019, Defendants issued to Respondent a document subpoena, calling on him to produce records relating to his three *The New Yorker* articles,[2] as well as fifty named individuals and entities. *See* Mot. to Quash, Decl. of Nicholas Schmidle, ECF No. 1-9 [hereinafter Schmidle Decl.], ¶ 7; Mot. to Quash, Ex. C, ECF No. 1-4 [hereinafter Ex. C]. The parties agree that the document subpoena is not at issue before this court. Mot. to Quash at 9; Defs.' Opp'n at 10.

Defendants then directed two deposition subpoenas to Respondent, one on June 18, 2019, and a second on June 27, 2019. Schmidle Decl. ¶¶ 9, 10; Mot. to Quash, Ex. E, ECF No. 1-6. On July 19, 2019, Respondent filed in this court a Motion to Quash these subpoenas, arguing that they are unenforceable on multiple grounds, including: (1) they were not served in accordance with the requirements of Federal Rule of Civil of Procedure 45; (2) they seek discovery that is

---

[2] In addition to "Crime Fiction," Respondent had two other articles published in *The New Yorker* pertaining to Hood's case: "Video: A Confession of Murder" published on July 28, 2014, and "Freedom for Tyrone Hood" published on January 13, 2015. Ex. C at 7; Mot. to Quash, Ex. B, ECF No. 1-3; Nicholas Schmidle, *Video: A Confession of Murder*, THE NEW YORKER (July 28, 2014), https://www.newyorker.com/news/news-desk/video-confession-murder. "Crime Fiction" was also published on July 28, 2014. *See* Article; Ex. C at 7.

unnecessary, cumulative, and burdensome; and (3) they demand testimony protected by the reporter's privilege, which Defendants cannot overcome.  *See generally* Mot. to Quash.

Shortly thereafter, Defendants moved to transfer Respondent's challenge to the Northern District of Illinois, arguing that the Illinois court is better suited to resolve the dispute. *See generally* Individual Officers' Motion to Transfer Motion to Quash or for Protective Order, ECF No. 6.  Defendants also opposed the relief sought by Respondent, and thus seek to compel Respondent's testimony.  *See generally* Defs.' Opp'n.

The court first addresses Defendants' Motion to Transfer, before turning to the merits of Respondent's Motion to Quash.

### III.

Under Rule 45, "[w]hen the court where compliance [with a subpoena] is required did not issue the subpoena, it may transfer a motion . . . to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  FED R. CIV. P. 45(f).  The Advisory Committee Notes to the 2013 amendments explain that a court's "prime concern should be avoiding burdens on local nonparties subject to subpoenas" but that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motions or the same issues are likely to arise in discovery in many districts."  FED R. CIV. P. 45(f) Advisory Committee Notes.  "Transfer is appropriate," however, "only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion."  *Id.*

A court in a compliance district "must not 'assume [ ] that the issuing court is in a superior position to resolve subpoena-related motions,'" but should "consider . . . the complexity, procedural posture, duration of pendency, and the nature of the issue pending before, or already

4

resolved by, the issuing court in the underlying litigation." *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014) (citation omitted); *see also Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014). In some cases, the judge from the issuing court will be "in a better position to rule on the . . . motion . . . due to her familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *Wultz*, 304 F.R.D. at 46. "[T]he proponent of transfer bears the burden of showing that" exceptional circumstances exist and transfer is warranted. FED. R. CIV. P. 45(f) Advisory Committee Notes.

"Exceptional circumstances" do not exist in this case. The issues that the parties ask the court to resolve are neither complicated nor so bound up with prior rulings in the underlying case such that it would be imprudent for this court to rule. Those issues include Defendants' compliance with Rule 45's service requirements, the burdensomeness of the sought-after testimony, and whether Defendants have met their burden for overcoming the reporter's privilege. While Defendants are correct that the Illinois action has been pending for several years and the court has ruled on a number of discovery motions in that time, *see e.g.*, Illinois Docket, ECF Nos. 86, 98, 191, 232, the issues presented here are not complex, and they do not rest on facts or law that the Illinois court is uniquely positioned to decide.

The cases that Defendants cite are inapposite. For example, in *In re UBS Financial Services, Inc. of Puerto Rico Securities Litigation*, this court transferred the defendants' motion to quash because the case involved "complex securities issues stemming from events in Puerto Rico," "[a]dditional plaintiffs and their cases [had] been . . . consolidated into, and terminated from" the proceedings, the judge in Puerto Rico "had issued a multitude of orders resolving significant procedural and discovery disputes," and with class certification still pending, the ruling on the

motion to quash might have "impacted the scope of discovery." 113 F. Supp. 3d 286, 288 (D.D.C. 2015). *In re UBS Financial Services* involved significantly more complex issues than this matter, and the ruling on the motion to quash was not isolated as here but had the potential to affect discovery more broadly. Likewise, the court in *Judicial Watch, Inc. v. Valle Del Sol, Inc.* transferred a motion to quash where the litigation had been pending for four years and involved "innumerable discovery disputes," putting the issuing court in a "far better position . . . to evaluate the relevance of, and necessity for, the documents demanded." 307 F.R.D. 30, 35 (D.D.C. 2014) (internal quotation marks omitted). Further, the petitioner raised the "extraordinary claim" that it was being targeted by abusive litigation tactics in the form of "serially defective subpoenas" because of the respondents' hatred for the petitioner. *Id.* The court found that the issuing court had "four years to observe the Respondents' conduct in the underlying litigation" and was therefore "in in the best position to evaluate [the petitioner's] argument" that the subpoena was served for an improper purpose. *Id. See also Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014) (finding that the judge in the underlying action was in a better position to rule on a motion to quash in a "highly complex and intricate" case "due to her familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation." Further, any ruling by the [*Wultz*] court in the compliance district would "inevitably disrupt" the judge's "management of the two highly complex actions currently pending."). "[E]xceptional circumstances" similar to those present in the cited cases simply do not exist here. Defendants' Motion to Transfer is therefore denied.

IV.

A.

Turning now to the merits of Respondent's Motion to Quash, as a threshold matter, Respondent contests Defendants' compliance with Rule 45's service requirements. Specifically, he contends that the subpoena delivered to him on June 18th is defective because the subpoena improperly designated the location of the deposition as "TBD." *See* Mot. to Quash at 9, 11–12. As for the June 27th subpoena, Respondent asserts that he was not served personally. The process server instead left the subpoena at his front door, thereby failing to comply with Rule 45's personal service requirement. *See id.* at 10, 12–13.

Respondent, however, has effectively abandoned these arguments. Defendants submit an affidavit from their process server, who attests that, on June 27th, she came to Respondent's home and through a locked door advised him that she was there to serve him with a subpoena, and Respondent refused to accept it. Defs.' Opp'n, Ex. Q, Decl. of Loqua Wade, ECF No. 6-20. The process server therefore left the subpoena on Respondent's front porch. *Id.* Respondent does not affirmatively concede to this recitation of events, but he does not dispute them either. *See* Resp't Combined Opp'n to Mot. to Transfer and Reply in Support of Mot. to Quash, ECF No. 10, at 6 n.3. Rather, he says that, "to the extent that the Court's resolution of his service objection would hinge on a judicial determination of questions of fact, [he] withdraws his service objections . . . ." *Id.* Supplied with no reason to question the process server's sworn statement, the court accepts her representations and finds that Respondent was properly served. *See Novak v. World Bank*, 703 F.2d 1305, 1310 n.14 (D.C. Cir. 1983) ("When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person.").

B.

Having found service on Respondent was proper, the court moves to his substantive challenges. He makes two. First, he contends that the subpoenas must be quashed either under Rule 26(b)(2) as "unreasonably cumulative or duplicative" or Rule 45(d)(3)(A)(iv) as subjecting him to "undue burden." Mot. to Quash at 13–15. Second, Respondent invokes the reporter's privilege, asserting that "defendants plainly seek to examine him regarding his newsgathering for the Article and other reports published in *The New Yorker*." *Id.* at 15. Because the court agrees with Respondent's second contention, it need not reach the first.

"[T]he court for the district where compliance [with a subpoena] is required must quash . . . a subpoena that . . . requires disclosure of privileged or other protected matter . . . ." FED. R. CIV. P. 45(d)(3)(A). This Circuit has long recognized a reporter's privilege, which rests on the foundation that "[c]ompelling a reporter to disclose the identity of a confidential source raises obvious First Amendment problems." *Zerilli v. Smith*, 656 F.2d 705, 710 (D.C. Cir. 1981). The privilege is not absolute, however, and a "balancing approach should be applied" to determine when compelled disclosure is appropriate. *Id.* at 712. "[W]hen striking the balance between the civil litigant's interest in compelled disclosure and the public interest in protecting a newspaper's confidential sources, [the court should] be mindful of the preferred position of the First Amendment and the importance of a vigorous press." *Id.*

In *Zerilli*, the D.C. Circuit identified two factors courts must consider when determining whether the reporter's privilege applies. First, courts must ask whether the "litigant's need for the information . . . is of central importance." *Id.* at 713. In other words, whether the need for discovery from the journalist "goes to the heart of the matter." *Id.* (internal quotation marks omitted). Second, courts must determine whether the party seeking discovery has attempted but

failed to acquire the evidence by other means. "[R]eporters should be compelled to disclose their sources only after the litigant has shown that he has exhausted every reasonable alternative source of information." *Id.*

There is some disagreement among the parties about whether any of the information that Defendants seek is confidential and whether, as a consequence, the *Zerilli* factors are relaxed here. *See* Mot. to Quash at 15 (citing Schmidle Decl. ¶ 3) ("Schmidle's newsgathering for the Article included both confidential and non-confidential sources."); Defs.' Opp'n at 21 ("Defendants do not seek Schmidle's confidential sources."). Regardless, the two *Zerilli* factors still apply. *See Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 17 (D.D.C. 2015) ("[A] party seeking to compel reporter testimony faces a less weighty burden when seeking non-confidential information" because "the risk of debilitating a journalist's ability to gather information is considerably diminished.") (internal quotation marks omitted). In *Goldberg*, this court granted the movant's motion to quash because the respondent's argument "founder[ed] on the second *Zerilli* factor," when the respondent "failed to demonstrate the requisite diligence in seeking evidence from alternative sources. [The respondent] argue[d] that it [could] not reasonably be expected to depose a large quantity of 'securities analysts covering the biotechnology sector' in the hope of finding the two with whom [the movant] spoke." *Id.* at 18. But the court held that, "[u]nfortunately for [the respondent], that is precisely what the law in this circuit requires." *Id.* As the court noted, "where there is a reasonably well-defined number of possible alternative sources for the same information sought from the journalist, the party seeking to compel testimony must demonstrate reasonable efforts to exhaust those possible sources." *Id.* (citing *Lee v. Dep't of Justice*, 413 F.3d 53, 61 (D.C. Cir. 2005)).

Just as in *Goldberg*, Defendants in this case run aground on the second *Zerilli* factor: they have not met their burden of showing that they "exhausted every reasonable alternative source of information." *Zerilli*, 656 F.2d at 713. Defendants seek to depose Respondent about "the media strategy, his role in it, the selection of content for the story and his communications with Hood's attorneys." Defs.' Opp'n at 21–22. Defendants note that "emails between [Respondent] and Hood's attorneys suggest that [Respondent] was given direction and specific evidence to develop his story," and that "Hood's attorneys also got [Respondent] access to impounded evidence." Defs.' Opp'n at 6. Defendants believe that "no other journalist was given the same access [to information about Hood's case] as [Respondent]." *Id.* There is an obvious alternative source for the information Defendants seek—Hood's post-conviction attorneys. Those lawyers are an equal, if not greater, source for discovering the role that media strategy played in Hood's post-conviction efforts.

Anticipating this response, Defendants assert that they have "run into roadblocks trying to get [the desired] information from Hood['s]" post-conviction counsel. Defs.' Opp'n at 22. Apparently, Defendants deposed at least one of Hood's post-conviction attorneys, as well as an investigator, but Hood's civil counsel made "overly broad privilege assertions," to include information regarding media strategy. *Id.* Also, Hood's civil attorneys have indicated that they will not allow any other attorneys to be deposed. *See id.* These "roadblocks" are not enough to overcome the reporter's privilege. Defendants "cannot escape their obligation to exhaust alternative sources simply because they fear[] that" obtaining information from Hood's post-conviction counsel "would be time-consuming, costly, and unproductive." *Zerilli*, 656 F.2d at 715; *see also Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 122 (D.D.C. 2002) (observing that even when a party "may have considerable difficulty obtaining the

information . . . [that] does not . . . relieve [the party] of trying initially to obtain the information elsewhere"). Here, Defendants have not even said that they intend to challenge Hood's civil attorneys' overly broad privilege assertions or the allegedly arbitrary limitations placed on who they may depose. Such challenges no doubt will involve greater time and resources, but it is what the law of this Circuit requires before a party can obtain evidence from a journalist. As Defendants have not shown that they have done everything they can to glean from elsewhere the information that they seek from Respondent, they fail to overcome "the preferred position of the First Amendment and the importance of a vigorous press." *Zerilli*, 656 F.2d at 712.[3] Respondent's Motion to Quash is therefore granted.

V.

For the foregoing reasons, the court denies Defendants' Motion to Transfer, ECF No. 6, and grants Respondent's Motion to Quash, ECF No. 1.

A final order accompanies this Memorandum Opinion.

Dated: October 18, 2019

Amit P. Mehta
United States District Court Judge

---

[3] Because the court finds that Defendants fail on the second *Zerilli* factor, the court need not address the first factor of whether the information Defendants seek from Respondent is of "central importance" to their case. *See Hutira*, 211 F. Supp. 2d at 122 (holding that the court did not need to address other factors when the plaintiff had not exhausted alternative sources because that factor weighed "so heavily in favor of quashing the subpoena").